Ely Grinvald, Esq.
2355 Westwood Blvd., #562
Los Angeles, CA 90064
Phone: (310) 405-5684
grinvaldely@gmail.com

*Attorney for Plaintiff,*
*Tyrol Mitchell*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**TYROL MITCHELL,**

**Plaintiff,**

v.

**LVNV FUNDING, LLC, and**
**MANDARICH LAW GROUP, LLP**

**Defendants.**

Case No: 5:25-cv-00555

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Tyrol Mitchell, by and through the undersigned counsel, complains, states, and alleges against defendants LVNV Funding, LLC and Mandarich Law Group, LLP, as follows:

## INTRODUCTION

1.     This is an action to recover damages for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. (the "FDCPA"), and the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, *et seq.* (the "RFDCPA").

2.     In 1977, Congress enacted the Fair Debt Collection Practices Act ("FDCPA"), codified at 15 USC §§ 1692 *et seq.*, in response to the "abundant

COMPLAINT AND
DEMAND FOR JURY TRIAL

evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). At that time, Congress was concerned that "abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id*. Congress concluded that "existing laws . . . [we]re inadequate to protect consumers," and that "the effective collection of debts" does not require "misrepresentation or other abusive debt collection practices." 15 U.S.C. §§ 1692(b) and (c).

3.    Congress explained that the purpose of the Act was not only to eliminate abusive debt collection practices, but also to "ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id*., § 1692(e). After determining that the existing consumer protection laws were inadequate, Congress gave consumers a private cause of action against debt collectors who failed to comply with the Act. *Id*., § 1692k.

4.    In determining whether a collection letter violates the FDCPA, courts in the Ninth Circuit apply the least sophisticated consumer standard, "[i]f the least sophisticated debtor would likely be misled by a communication from a debt collector, the debt collector has violated the [FDCPA]." *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007).

COMPLAINT AND
DEMAND FOR JURY TRIAL

5.      The FDCPA does not ordinarily require proof of an intentional violation, and is considered a strict liability statute, whereby a single violation is sufficient to establish civil liability against a debt collector.

6.      The California Legislature in passing the RFDCPA found that "[u]nfair or deceptive collection practices undermine the public confidence. . ." Cal. Civ. Code § 1788.1(a)(1).  "There is need to ensure that debt collectors and debtors exercise their responsibilities to one another with fairness, honesty and due regard for the rights of the other." *Id*. at § 1788.1(a)(2).

7.      Therefore, a purpose of the RFDCPA is "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts. . ." *Id*. at § 1788.1(b).

## JURISDICTION AND VENUE

8.      This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337, and 15 U.S.C. § 1692k(d).

9.      The Court has supplemental jurisdiction of any state law claims pursuant to 28 U.S.C. §1367.

10.      This court has jurisdiction over defendants LVNV Funding, LLC and Mandarich Law Group, LLP because defendants regularly conduct and transact business in this state, and the conduct complained of herein occurred in this Judicial District.

COMPLAINT AND
DEMAND FOR JURY TRIAL

11.    Venue is proper in this Judicial District under 28 U.S.C. § 1391(b) because a substantial part of the conduct complained of herein occurred in this Judicial District.

## PARTIES

12.    Plaintiff Tyrol Mitchell ("Plaintiff") is a natural person who is a citizen of the State of California, residing in Riverside, Riverside County, California.

13.    Plaintiff is a "consumer" as that term defined by 15 U.S.C. § 1692a(3).

14.    Plaintiff is a "person" as that term is defined by Cal. Civ. Code § 1788.2.(g).

15.    Defendant LVNV Funding, LLC ("LVNV") is a company existing under the laws of the State of Delaware, with its principal place of business in Wilmington, Delaware.

16.    LVNV has transacted business within this state as is more fully set forth hereinafter in this Complaint.

17.    LVNV regularly collects or attempts to collect debts asserted to be owed to others.

18.    LVNV is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

19.    The principal purpose of LVNV's business is the collection of such debts.

COMPLAINT AND
DEMAND FOR JURY TRIAL

20.     LVNV uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business.

21.     LVNV is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

22.     LVNV is a "debt collector" as that term is defined by Cal. Civ. Code § 1788.2(c).

23.     Defendant Mandarich Law Group, LLP ("MLG") is a company existing under the laws of the State of Illinois, with its principal place of business in Chicago, Illinois.

24.     MLG has transacted business within this state as is more fully set forth hereinafter in this Complaint.

25.     MLG regularly collects or attempts to collect debts asserted to be owed to others.

26.     MLG is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

27.     The principal purpose of MLG's business is the collection of such debts.

28.     MLG uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business.

29.     MLG is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

30.     MLG is a "debt collector" as that term is defined by Cal. Civ. Code § 1788.2(c).

31.     The acts of Defendants as described in this Complaint were performed by Defendants or on Defendants' behalf by their owners, officers, agents, and/or employees acting within the scope of their actual or apparent authority.  As such, all references to Defendants in this Complaint shall mean Defendants or their owners, officers, agents, and/or employees.

## FACTUAL ALLEGATIONS

32.     LVNV is one of the "Resurgent Companies," which is a self-labeled group of at least two dozen entities, all interrelated in a complex business structure focusing primarily on the purchase and collection of consumer debt[1].

33.     In addition to LVNV, these companies include Anson Street LLC, Ashley Funding Services LLC, CACH, LLC, CACV of Colorado, LLC, East Bay Funding, LLC, East Bay Holdings, LLC, Pinnacle Credit Services, LLC, PYOD LLC, Resurgent Acquisitions, LLC, Resurgent Capital Services PR LLC ("Resurgent"), Resurgent Funding, LLC, Resurgent Receivables, LLC, Resurgent Strategic Investments, LLC, SFG REO, LLC, Sherman Acquisition LLC, Sherman

---

[1] Much of the information concerning the structure of the Resurgent Companies set forth herein is based upon public record, as well as an enforcement action brought by the Maryland Commissioner of Financial Regulation, and *LVNV Funding LLC v. Finch*, 463 Md. 586, 591, 207 A.3d 202, 205 (2019).

COMPLAINT AND
DEMAND FOR JURY TRIAL

Capital, LLC, Sherman Financial Group, LLC, Sherman Originator III LLC, and Sherman Originator LLC.

34.     The majority of the two dozen Resurgent Companies, including LVNV, are shell companies managed by a single individual, Bryan Faliero ("Faliero"), and have no employees of their own, but are instead controlled by "Resurgent Capital Services." Faliero is also the President and CEO of Resurgent.

35.     LVNV has no employees.

36.     LVNV has no collection agreements.

37.     Instead, employees of Resurgent act as unpaid "representatives" of LVNV and many of the other shell companies through what the employees believe is a "limited power of attorney."

38.     These "representatives" are often unaware of whether at a given time they are acting as an employee of Resurgent, a representative of one of the shell companies, or both.

39.     Through the shell companies, Resurgent "purchases" large portfolios of consumer debt for pennies on the dollar, and at the exact same time that the portfolios are purchased, the shell companies literally simultaneously "sell" the portfolios to each other using a bogus document entitled a "Declaration of Transfer and Assignment" (the "Declarations.")

40.     The Declarations appear at first glance to be legitimately hand-signed

documents, purportedly transferring the ownership of subject accounts between the

shell companies. However, the Declarations are neither signed, nor legitimate.

Instead, they are a sham.

41. Indeed, both the "signature" and "signature block" of Jon Mazzoli

(listed as a "Director" of Sherman Originator III, LLC) are clearly lifted from a single

Declaration, and then cut-and-pasted onto thousands of other Declarations, the only

difference being the alleged date the Declaration was purportedly signed by Mr.

Mazzoli. Below is a single example take from the hundreds of sham Declarations:



42. Both the "signature" and "signature block" of Jackson Walker (listed as

an "Authorized Representative" of Sherman Originator) are clearly lifted from a

single Declaration, and then cut-and-pasted onto thousands of other Declarations, the

only difference being the alleged date the Declaration was purportedly signed by Mr.

Walker. Below is a single example take from the hundreds of sham Declarations:

COMPLAINT AND
DEMAND FOR JURY TRIAL

43.     Both the "signature" and "signature block" of Daniel Picciano (listed as an "Authorized Representative" of Sherman Originator) are clearly lifted from a single Declaration, and then cut-and-pasted onto thousands of other Declarations, the only difference being the alleged date the Declaration was purportedly signed by Mr. Picciano.  Below is a single example take from the hundreds of sham Declarations:

Dated: December 18, 2019     LVNV Funding LLC
                             a Delaware Limited Liability Company

                             By: _____
                             Name: Daniel Picciano
                             Title:  Authorized Representative

Dated: May 14, 2021     LVNV Funding LLC
                        a Delaware Limited Liability Company

                        By: _____
                        Name: Daniel Picciano
                        Title:  Authorized Representative

44.     Both the "signature" and "signature block" of Kevin Branigan (listed as an "Authorized Representative" of Sherman Originator) are clearly lifted from a single Declaration, and then cut-and-pasted onto thousands of other Declarations, the only difference being the alleged date the Declaration was purportedly signed by Mr. Branigan.  Below is a single example take from the hundreds of sham Declarations:

Dated: June 15, 2018     Sherman Originator LLC
                         a Delaware Limited Liability Company

                         By: _____
                         Name:  Kevin Branigan
                         Title:  Authorized Representative

Dated: December 18, 2018     Sherman Originator LLC
                             a Delaware Limited Liability Company

                             By: _____
                             Name:  Kevin Branigan
                             Title:  Authorized Representative

COMPLAINT AND
DEMAND FOR JURY TRIAL

45.     Both the "signature" and "signature block" of Rusty Kendall (listed as an "Authorized Representative" of LVNV) are clearly lifted from a single Declaration, and then cut-and-pasted onto thousands of other Declarations, the only difference being the alleged date the Declaration was purportedly signed by Mr. Kendall.  Below is a single example take from the hundreds of sham Declarations:

Dated: **August 20, 2018**                LVNV Funding LLC
                                         a Delaware Limited Liability Company

By: _____
                    Name: Rusty Kendall
                    Title:  Authorized Representative

Dated: **December 06, 2018**                LVNV Funding LLC
                                         a Delaware Limited Liability Company

By: _____
                    Name: Rusty Kendall
                    Title:  Authorized Representative

46.     Over at least the past six (6) years, LVNV and the other shell companies have flooded state courts across the country, including this court, with hundreds of thousands of lawsuits claiming consumers owe them money based on these bogus Declarations. These Declarations are set forth in the complaints against theses consumers as alleged "proof" of LVNV's "chain of title." These Declarations also served as the basis for LVNV to demand payment via letter, from hundreds of thousands of consumers, including Plaintiff.

47.     Indeed, here, LVNV's purported right to demand payment from Plaintiff is based only on one of the sham Declarations. No independent right to payment is even claimed by LVNV.

48.     Plaintiff is a victim of LVNV's illegal conduct.

49.     LVNV alleges Plaintiff owes a debt to LVNV for a personal Mercury

- 10 -

COMPLAINT AND
DEMAND FOR JURY TRIAL

credit card account with First Bank & Trust ("Mercury").

50.    Plaintiff retained counsel to assist Plaintiff with the Mercury debt.

51.    On March 10, 2022, April 11, 2022, and on June 9, 2022, Plaintiff's counsel notified Mercury of its representation of Plaintiff concerning the alleged debt and demanded that all further direct communications with Plaintiff concerning the alleged debt cease ("the Letters of Representation").

52.    The Letters of Representation set forth Plaintiff's attorneys' name and address.

53.    In fact, Mercury acknowledged Plaintiff's attorneys' representation and began communicating with Plaintiff's counsel.

54.    LVNV asserts Mercury transferred and/or assigned the alleged debt to LVNV for purposes of collection.

55.    Creditors, like Mercury, have a pattern and practice of transferring or assigning debts after receipt of Letters of Representation because Citibank renders the account uncollectible once a consumer retains an attorney or provides a cease and desist.

56.    It is standard practice in the accounts receivable management industry, when debts are transferred and/or assigned to downstream entities, including debt collectors, for such debts to be identified as subject to attorney representation letters and/or cease and desist letters.

57.   Also, it is standard practice in the accounts receivable management industry, when debts are transferred and/or assigned in bulk portfolios to downstream entities, including debt collectors, for such portfolios to be identified, either explicitly, or through an indicator in the portfolio's file name, that such accounts are subject to attorney representation letters and/or cease and desist letters.

58.   Further, it is in the interest of public policy when debts are transferred and/or assigned to downstream entities, including debt collectors, for all information to be transferred, including Letters of Representation.

59.   LVNV was notified by Mercury of Plaintiff's attorneys' representation in the transfer file(s) or the transfer file name that included a notation which informed LVNV that the portfolio was a portfolio of accounts of consumer who were represented by counsel.

60.   LVNV was notified by Mercury of the Letters of Representation in the account level documentation.

61.   LVNV was notified by Mercury of the cease and desist in the transfer file(s) or the transfer file name that included a notation which informed LVNV that the portfolio was a portfolio of accounts that previously provided a cease and desist from further direct communication with the consumer.

62.   When a consumer's account is sold in a **true sale** the purchaser would receive the entire file and account history from the seller for the account.

COMPLAINT AND
DEMAND FOR JURY TRIAL

63.    The legal standard for a true sale is governed by both federal and state law.

64.    Additionally, the criteria for a true sale under U.S. GAAP would include: i) legal isolation of the transferred assets, which places the assets beyond the reach of the transferor's creditors or a bankruptcy trustee for the transferor, ii) the transferee's right to freely pledge or exchange the transferred assets, and iii) the transferor's relinquishment of effective control of the transferred assets.

65.    Conversely, the transaction would likely not be a true sale if it includes certain indicia of retained ownership, such as: i) the receipt by the seller of certain servicing fees in connection with the disposed assets, ii) the right of the seller to repurchase the disposed assets, iii) the right of the seller to share in the profits or revenue generated by the disposed assets, or iv) the right of the seller to terminate the sale transaction.

66.    LVNV asserts it is the current creditor of the alleged debt, therefore, LVNV would have received all material information and documentation regarding the account, including the Letters of Representation.

67.    Sometime thereafter, LVNV, likely through its master servicer Resurgent Capital Services LP, transferred, placed, and/or assigned the alleged debt with MLG, a third party debt collector, for purposes of collection on behalf of LVNV.

68.    Nevertheless, as part of its utilization of MLG, LVNV or its servicer

- 13 -

conveyed information concerning Plaintiff and the alleged debt to MLG, a third party debt collector, by electronic means.

69.    The information conveyed by LVNV to MLG, which upon information and belief, was viewed by employees of MLG, contained Plaintiff's personal and private information including personal identifying data, such as Plaintiff's name, address, social security number, date of birth, information regarding the alleged debt, among other things.

70.    Despite the Letters of Representation, in an attempt to collect the alleged debt, MLG sent Plaintiff a letter on behalf of LVNV, dated July 26, 2024 (the "July Letter") directly to Plaintiff.

71.    The July Letter was received and read by Plaintiff.

72.    Plaintiff's attorney did not consent to Defendants direct communication with Plaintiff.

73.    Defendants did not send the July Letter to Plaintiff's attorney.

74.    Defendants did not send any letters concerning the alleged debt to Plaintiff's attorney.

75.    Defendants did not attempt to communicate at all with Plaintiff's attorneys concerning the alleged debt.

76.    MLG was notified of Plaintiff's attorneys' representation in the Letters of Representation when LVNV transferred, assigned, or otherwise placed the alleged

COMPLAINT AND
DEMAND FOR JURY TRIAL

debt for the purposes of collection.

77.    MLG had actual notice of the Letters of Representation either from the placement file or through a client portal provided by LVNV or Resurgent Capital Services LP to MLG, which contains account level documentation such as account statements for Plaintiff and notices of attorney representation.

78.    In fact, LVNV has a pattern and practice of communicating with consumers after receiving attorney representation letters and/or cease and desist letters.

79.    In fact, LVNV has a pattern and practice of communicating with consumers after receiving notice of consumers' attorneys' representation.

80.    In fact, LVNV has a pattern and practice of communicating with consumers after receiving notice of consumers' attorneys' information.

81.    In support of the foregoing, and by way of example only, consumers in other lawsuits have alleged substantially the same conduct as alleged herein against LVNV:

- *Martinez v. LVNV Funding, LLC, et al*., 1:24-cv-01228-JLT-CDB (E.D. Ca.),

- *Martinez, v. LVNV Funding, LLC, et al.*, 1:24-cv-01597-JLT-CDB (E.D. Ca.),

- *Alido v. LVNV Funding, LLC, et al*., 5:25-cv-00121-JGB-SHK (C.D. Ca.),

- *Floyd v. LVNV Funding, LLC,* 2:24-cv-00047-LGW-BWC (S.D. Ga.),

- *Bare v. LVNV Funding, LLC*, 1:23-CV-01461-RGA (D. Del.),

- *Carr v. LVNV Funding, LLC*, 1:23-cv-01476-UNA (D. Del.),

- *Coon v. LVNV Funding, LLC, et al.*, 1:23-cv-00608-GBW (D. Del.),

- *Miner v. LVNV Funding, LLC*, 1:24-cv-364-UNA (D. Del.),

- *Roe v. LVNV Funding, LLC*, 1:24-cv-00611-RGA (D. Del.),

- *Meyers v. LVNV Funding, LLC, et al.*, 4:23-cv-00833-RLW (E.D. Mo.),

- *Roe v. LVNV Funding, LLC, et al.*, 4:23-cv-00863-SRW (E.D. Mo.),

- *Zamora v. LVNV Funding, LLC, et al.*, 4:23-cv-00907-SPM (E.D. Mo.),

- *McCarthy v. LVNV Funding, LLC, et al.*, 4:23-cv-00905-SPM (E.D. Mo.),

- *Amy v. LVNV Funding, LLC, et al.*, 4:23-cv-00903-JMB (E.D. Mo.),

- *Vanourney v. LVNV Funding, LLC, et al.*, 4:23-cv-00902-HEA (E.D. Mo.),

- *Guyer v. LVNV Funding, LLC, et al.*,  4:23-cv-00906-AGF (E.D. Mo.),

- *Whitham v. LVNV Funding, LLC, et al.*, 4:23-cv-00732-MTS (E.D. Mo.),

- *Verrett v. LVNV Funding, LLC, et al.*, 4:23-cv-00726-JMB (E.D. Mo.), and

- *Armenio v. LVNV Funding, LLC, et al.*, 4:23-cv-01639-HSG (N.D. Ca.).

82.     Then, September 4, 2024, Plaintiff's counsel again notified Defendants its representation of Plaintiff concerning the alleged debt, again demanded that all further direct communications with Plaintiff concerning the alleged debt cease, and again disputed the alleged debt.

COMPLAINT AND
DEMAND FOR JURY TRIAL

83.     The July Letter was the initial written communication from MLG regarding the alleged debt.

84.     Relevant here, MLG is a debt collector *masquerading* as a law firm.

85.     The July Letter states MLG is a "debt collector."

86.     The July Letter was not sent from a California law office or even contain a California address, but rather the July Letter contains a PO Box in Chicago, Illinois.

87.     The July Letter does not indicate the name of the California attorney, or any attorney, who reviewed Plaintiff's file or the letter prior to mailing to Plaintiff.

88.     Plaintiff has never been contacted by a California attorney, or any attorney, from MLG.

89.     MLG's website clearly indicates that it operates as a traditional debt collector.[2]

90.     Traditional debt collection services provided by Mandarich include i) demand and contact [consumers], ii) call and collect [from consumers], and iii) negotiate and settle [with consumers].[3]

91.     MLG employs traditional non-attorney debt collection agents and is regularly hiring non-attorney debt collection agents.[4] For example, MLG is currently

---

[2] See https://mandarichlaw.com/.

[3] *Id.*

[4] See https://mandarichlaw.hrmdirect.com/employment/job-openings.php?search=true&.

hiring a collection agent in Woodland Hills, California.

92.    The July Letter stated, or otherwise implied, that Plaintiff no longer owed money to Mercury but not owed money to LVNV.

93.    However, Plaintiff was never involved in any transaction with LVNV for $6,717.13 and never entered into any contract with LVNV for the payment of $6,717.13.  Plaintiff was never indebted to LVNV, and was never indebted to LVNV for $6,717.13.  LVNV never extended credit to Plaintiff for $6,717.13.   LVNV does not possess competent proof that Plaintiff owes $6,717.13 to LVNV.

94.    LVNV holds no legal right, title, or interest in $6,717.13 owed by Plaintiff.

95.    MLG holds no legal right, title, or interest to demand payment of $6,717.13 from Plaintiff on behalf of LVNV.

96.    Despite the foregoing, LVNV began reporting the alleged debt to one or more credit reporting agencies.

97.    LVNV's credit reporting negatively impacted Plaintiff's credit.

98.    LVNV's credit reporting negatively impacted Plaintiff's creditworthiness.

99.    LVNV's credit reporting was viewed by third parties.

100.   Plaintiff suffered harm related directly to LVNV's conduct, including loss of credit and higher interest rates.

101.  In fact, at the time LVNV began reporting information regarding the alleged debt, Mercury was also reporting information regarding the same debt.

102.  LVNV's reporting provided a "date opened" of October 19, 2022, however, Mercury was reporting a "date opened" of April 22, 2014.

103.  In addition, Mercury was reporting a balance of $5,637.00 written off, but LVNV was reporting $6,717.00.

104.  Any person or entity reviewing Plaintiff's credit report would reasonably believe Plaintiff had two different account reporting negative information.

105.  Consumers, like the Plaintiff, have a right to truthful, clear, and accurate communications from debt collectors.

106.  LVNV is liable for the actions and inactions of the debt collectors it retains.

107.  Defendants' conduct as described in this Complaint was willful, with the purpose to either harm Plaintiff or with reckless disregard for the harm to Plaintiff that could result from Defendants' conduct.

108.  Plaintiff justifiably fears that, absent this Court's intervention, Defendants will continue to use abusive, deceptive, unfair, and unlawful means in their attempts to collect the alleged debt and other alleged debts.

109.  Plaintiff justifiably fears that, absent this Court's intervention,

Defendants will ultimately cause Plaintiff further unwarranted economic harm.

110.   Plaintiff justifiably fears that, absent this Court's intervention, Defendants will ultimately cause Plaintiff unwarranted harm to Plaintiff's credit rating.

111.   Plaintiff justifiably fears that, absent this Court's intervention, Defendants will ultimately cause Plaintiff to be sued.

112.   Plaintiff has the right to live without being subject to false claims from Defendants. Plaintiff has the right to be free from invasions into her privacy and intrusions upon her solitude and seclusion. Plaintiff has the right to be free from harassing, annoying, oppressive, and abusive conduct. Defendants infringed upon Plaintiff's rights, causing her concern, worry, loss of time, emotional distress, and economic harm.

113.   A favorable decision herein would serve to deter Defendants from further similar conduct.

## FIRST COUNT
## Violation of 15 U.S.C. §§ 1692c(b) and 1692f

114.   Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

115.   The Plaintiff is a "consumer" as that term defined by the FDCPA.

116.   LVNV is a "debt collector" as that term is defined by the FDCPA.

117.   MLG is a "debt collector" as that term is defined by the FDCPA.

118.   The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

119.   The July Letter is a "communication" as that term is defined by the FDCPA.

120.   The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

121.   15 U.S.C. § 1692c(b) provides that, subject to several exceptions not applicable here, "a debt collector may not communicate, in connection with the collection of any debt," with anyone other than the consumer "without the prior consent of the consumer given directly to the debt collector."

122.   The third-party debt collector does not fall within any of the exceptions provided for in 15 U.S.C. § 1692c(b).

123.   LVNV's conveyance of Plaintiff's personal and private information to MLG is a "communication" as that term is defined by the FDCPA.

124.   LVNV's conveyance of Plaintiff's personal and private information to the Resurgent Companies and/or affiliates is a "communication" as that term is defined by the FDCPA.

COMPLAINT AND
DEMAND FOR JURY TRIAL

125.   Plaintiff never consented to LVNV's communication with the third-party debt collector concerning the alleged debt.

126.   Plaintiff never consented to LVNV's communication with MLG, a third-party debt collector, concerning the alleged debt.

127.   Plaintiff never consented to LVNV's communication with the third-party debt collector, MLG, concerning Plaintiff's personal and/or confidential information.

128.   Plaintiff never consented to LVNV's communication with any of the Resurgent Companies and/or affiliates of LVNV.

129.   In fact, Plaintiff never consented to LVNV's communication with anyone concerning the alleged debt or concerning Plaintiff's personal and/or confidential information.

130.   Upon information and belief, LVNV has utilized third-party debt collectors for these purposes thousands of times.

131.   LVNV utilizes third-party debt collectors in this regard for the sole purpose of maximizing its profits.

132.   LVNV utilizes third-party debt collectors without regard to the propriety and privacy of the information which it discloses to such third-party.

COMPLAINT AND
DEMAND FOR JURY TRIAL

133.   LVNV utilizes third-party debt collectors with reckless disregard for the harm to Plaintiff and other consumers that could result from LVNV's unauthorized disclosure of such private and sensitive information.

134.   In fact, debt collectors have been the subject of data breaches, exposing consumer names, dates of birth, Social Security numbers, and account information.

135.   Millions of consumers, including consumers in the State of California, have been the victims of data breaches stemming from the reckless and unauthorized transferring and sharing of consumers' information by companies, including debt collectors.

136.   In fact, FBCS, Inc. was one of the latest data breaches, exposing personal data of over 4 million consumers[5].

137.   In fact, prior to the data breach, LVNV transferred consumers' personal and private information to FBCS, Inc. in LVNV's use of FBCS, Inc. as a third-party debt collector.

138.   In addition, another debt collector, Berman & Rabin, P.A., recently reported a data breach impacting over 150,000 consumers.[6]

---

[5] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/186129d3-f965-48f0-a48d-fbdfc6b74b02.html

[6] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/f8a4e19d-4761-4077-a745-d1c74762feb8.html

COMPLAINT AND
DEMAND FOR JURY TRIAL

139.   In fact, prior to the data breach, LVNV transferred consumers' personal and private information to Berman & Rabin, P.A. in LVNV's use of Berman & Rabin, P.A. as a third-party debt collector.

140.   LVNV utilizes third-party debt collectors with reckless disregard for Plaintiff's right to privacy.

141.   LVNV utilizes third-party debt collectors with reckless disregard for Plaintiff's right against public disclosure of Plaintiff's private facts.

142.   LVNV violated 15 U.S.C. § 1692c(b) when it disclosed information about Plaintiff's alleged debt to the third-party debt collector, MLG.

143.   LVNV violated 15 U.S.C. § 1692c(b) when it disclosed information about Plaintiff's alleged debt to the Resurgent Companies and/or affiliates.

144.   15 U.S.C. § 1692f provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

145.   The unauthorized disclosure of a consumer's private and sensitive information is both unfair and unconscionable.

146.   LVNV disclosed Plaintiff's private and sensitive information to the third-party debt collector, MLG.

147.   LVNV disclosed Plaintiff's private and sensitive information to the Resurgent Companies and/or affiliates.

COMPLAINT AND
DEMAND FOR JURY TRIAL

148.   LVNV violated 15 U.S.C. § 1692f when it disclosed Plaintiff's private and sensitive information to the third-party debt collector, MLG.

149.   As relevant here, Congress enacted the FDCPA upon finding that existing laws and procedures for redressing invasions of individual privacy during the debt collection process were inadequate to protect consumers.   15 U.S.C. § 1692(a)-(b).

150.   Specifically,   Congress   sought   to   protect   consumers   from communications by debt collectors to third parties.   See S. Rep. No. 95-382, at 4 (1977) reprinted in U.S.C.C.A.N. 1695, 1698.

151.   As such, a violation of Section 1692c(b) has a close relationship to an invasion of privacy.

152.   A violation of Section 1692c(b) is an invasion of privacy.

153.   As described herein, LVNV violated Section 1692c(b).

154.   As described herein, LVNV invaded Plaintiff's privacy.

155.   A violation of Section 1692c(b) also has a close relationship to a public disclosure of private facts.

156.   A violation of Section 1692c(b) is a public disclosure of private facts.

157.   As described herein, LVNV violated Section 1692c(b).

158.   As described herein, LVNV publicly disclosed Plaintiff's private facts.

COMPLAINT AND
DEMAND FOR JURY TRIAL

159.   For the foregoing reasons, LVNV violated 15 U.S.C. §§ 1692c(b) and 1692f and is liable to Plaintiff therefor.

## SECOND COUNT
## Violation of 15 U.S.C. §§ 1692g, 1692g(a)(1) and 1692g(a)(2)

160.   Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

161.   The Plaintiff is a "consumer" as that term defined by the FDCPA.

162.   LVNV is a "debt collector" as that term is defined by the FDCPA.

163.   MLG is a "debt collector" as that term is defined by the FDCPA.

164.   The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

165.   The July Letter is a "communication" as that term is defined by the FDCPA.

166.   The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

167.   15 U.S.C. § 1692g provides that within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the information is contained in the initial communication or

the consumer has paid the debt, send the consumer a written notice containing certain enumerated information.

168.   As relevant here, 15 U.S.C. § 1692g(a)(1) requires the written notice provide a statement of the amount of the debt.

169.   To comply with 15 U.S.C. § 1692g(a)(1), the statement of the amount of the debt must accurately set forth the actual amount of the debt.

170.   A statement of the amount of the debt, when the debt is not owed at all by the consumer, violates 15 U.S.C. § 1692g(a)(1).

171.   As previously stated, Plaintiff did not owe the amount Defendants allege is owed to LVNV by Plaintiff.

172.   As such, Defendants did not accurately set forth the actual amount of the alleged debt as required by 15 U.S.C. § 1692g(a)(1).

173.   Defendants' statement of the amount of the alleged debt, when Plaintiff did not owe that amount, violates 15 U.S.C. § 1692g(a)(1).

174.   As also relevant here, 15 U.S.C. § 1692g(a)(2) requires the written notice provide a statement of the name of the creditor to whom the debt is owed.

175.   To comply with 15 U.S.C. § 1692g(a)(2), the statement of the name of the creditor to whom the debt is owed must accurately set forth the name of the entity that actually owns the debt.

COMPLAINT AND
DEMAND FOR JURY TRIAL

176.   A statement of the name of the creditor to whom the debt is owed, when the consumer does not owe money to the stated entity, violates 15 U.S.C. § 1692g(a)(2).

177.   As set forth above, Plaintiff did not owe money to LVNV.

178.   As such, Defendants did not accurately set forth the name of the entity that actually owns the debt as required by 15 U.S.C. § 1692g(a)(2).

179.   Defendants' statement that LVNV was the name of the creditor to whom the alleged debt was owed, when Plaintiff did not owe any money to LVNV, violates 15 U.S.C. § 1692g(a)(2).

180.   For the foregoing reasons, Defendants violated 15 U.S.C. §§ 1692g, 1692g(a)(1) and 1692g(a)(2), and are liable to Plaintiff therefor.

## THIRD COUNT
### Violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), and 1692e(10)

181.   Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

182.   The Plaintiff is a "consumer" as that term defined by the FDCPA.

183.   LVNV is a "debt collector" as that term is defined by the FDCPA.

184.   MLG is a "debt collector" as that term is defined by the FDCPA.

185.   The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

186.   The July Letter is a "communication" as that term is defined by the FDCPA.

187.   The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

188.   15 U.S.C. § 1692d provides, generally, that a debt collector may not engage in conduct the natural consequence of which is to harass, abuse, and/or oppress.

189.   15 U.S.C. § 1692e provides, generally, that a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

190.   15 U.S.C. § 1692e(2)(A) prohibits the false representation of the character, amount, or legal status of any debt.

191.   15 U.S.C. § 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.

192.   An allegation by a debt collector that a consumer owes a debt to a certain entity when the consumer does not owe a debt to that entity is a violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A) and 1692e(10).

193.   An allegation by a debt collector that a consumer owes a certain amount of money when the consumer does not that amount is a violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A) and 1692e(10).

194.   As previously stated in this Complaint, Plaintiff did not owe the amount Defendants alleged is owed to LVNV by Plaintiff.

195.   Defendants' contention that Plaintiff owed the alleged debt to LVNV, when Plaintiff did not owe the alleged debt to LVNV, amounts to conduct the natural consequence of which is to harass, abuse, and/or oppress in connection with the collection of the alleged debt in violation of 15 U.S.C. § 1692d.

196.   Defendants' contention that Plaintiff owed the alleged debt to LVNV, when Plaintiff did not owe the alleged debt to LVNV, is a false, misleading, and/or deceptive representation, in violation of 15 U.S.C. § 1692e.

197.   Defendants' contention that Plaintiff owed the alleged debt to LVNV, when Plaintiff did not owe the alleged debt to LVNV, is a false representation of the character, amount, or legal status of the alleged debt, in violation of 15 U.S.C. § 1692e(2)(A).

198.   Defendants' contention that Plaintiff owed the alleged debt to LVNV, when Plaintiff did not owe the alleged debt to LVNV, is a false representation or deceptive means to collect or attempt to collect the alleged debt, in violation of 15 U.S.C. § 1692e(10)

COMPLAINT AND
DEMAND FOR JURY TRIAL

199.  For the foregoing reasons, Defendants violated 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), and 1692e(10) and are liable to Plaintiff therefor.

### FOURTH COUNT
### Violation of 15 U.S.C. §§ 1692c(a)(2) and 1692c(c)

200.  Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

201.  The Plaintiff is a "consumer" as that term defined by the FDCPA.

202.  LVNV is a "debt collector" as that term is defined by the FDCPA.

203.  MLG is a "debt collector" as that term is defined by the FDCPA.

204.  The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

205.  The July Letter is a "communication" as that term is defined by the FDCPA.

206.  The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

207.  15 U.S.C. § 1692c(a)(2), titled "Communication with the Consumer Generally," prohibits a debt collector from communicating with a consumer in connection with the collection of any debt "if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can

readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer."

208. As described herein, LVNV violated 15 U.S.C. § 1692c(a)(2).

209. A violation of 15 U.S.C. § 1692c(a)(2) has a close relationship to an invasion of privacy.

210. A violation of Section 15 U.S.C. § 1692c(a)(2) is an invasion of privacy.

211. Defendants invaded Plaintiff's privacy.

212. 15 U.S.C. § 1692c(c), titled "Ceasing Communication," prohibits a debt collector, subject to certain exceptions not relevant here, from communicating with a consumer in connection with the collection of any debt "[i]f a consumer notifies a debt collector in writing . . . that the consumer wishes the debt collector to cease further communication with the consumer."

213. 15 U.S.C. § 1692c(c) further states, "[i]f such notice from the consumer is made by mail, notification shall be complete upon receipt."

214. As described herein, Defendants violated 15 U.S.C. § 1692c(c).

215. A violation of 15 U.S.C. § 1692c(c) has a close relationship to an intrusion upon the rights to solitude and seclusion.

216. A violation of 15 U.S.C. § 1692c(c) is an intrusion upon the rights to

solitude and seclusion.

217.  Defendants intruded upon Plaintiff's rights to solitude and seclusion.

218.  A violation of 15 U.S.C. § 1692c(c) also has a close relationship to interference with the attorney-client relationship.

219.  A violation of Section 1692c(c) is an interference with the attorney-client relationship.

220.  Defendants interfered with Plaintiff's and his attorney's attorney-client relationship.

221.  For the foregoing reasons, Defendants violated 15 U.S.C. §§ 1692c(a)(2) and 1692c(c) and are liable to Plaintiff therefor.

## FIFTH COUNT
## Violation of 15 U.S.C. § 1692e(8)

222.  Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

223.  The Plaintiff is a "consumer" as that term defined by the FDCPA.

224.  LVNV is a "debt collector" as that term is defined by the FDCPA.

225.  The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

226.  Each report to a credit reporting agency is a "communication" as that term is defined by the FDCPA.

- 33 -

COMPLAINT AND
DEMAND FOR JURY TRIAL

227. The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

228. 15 U.S.C. § 1692e(8) prohibits a debt collector from communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

229. LVNV violated the FDCPA by reporting the alleged debt to one or more credit reporting agencies when Plaintiff did not owe LVNV the money they were attempting to collect.

230. For the foregoing reasons, LVNV violated 15 U.S.C. § 1692e(8), and is liable to Plaintiff therefor.

## SIXTH COUNT
## Violation of Cal. Civ. Code § 1788.13(k)

231. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

232. Cal. Civ. Code § 1788.13(k) prohibits debt collectors from the false representation that the consumer debt has been, is about to be, or will be sold, assigned, or referred to a debt collector for collection.

COMPLAINT AND
DEMAND FOR JURY TRIAL

233. The July Letter stated, in the relevant part, that the alleged debt was sold to LVNV.

234. MLG's representation that the debt was sold to LVNV is a legal conclusion.

235. MLG does not review the underlying sale documents prior to sending letters to consumers.

236. MLG does not investigate whether LVNV is in fact the current creditor of the alleged debt.

237. MLG does not investigate whether the transaction between the original creditor and LVNV was in fact a true sale.

238. MLG's intentional or negligent conduct of falsely representing that LVNV is the current creditor of the debt, caused Plaintiff confusion, anxiety, worry, and emotional distress, causing Plaintiff to spend time to retain counsel, causing her loss of time, in violation of Cal. Civ. Code § 1788.13(k).

239. MLG's false representation that the debt has been, is about to be, or will be sold, assigned, or referred to a debt collector for collection, violates Cal. Civ. Code § 1788.13(k).

240. For the foregoing reasons, Defendants violated Cal. Civ. Code § 1788.13(k), and are liable to Plaintiff therefor.

**SEVENTH COUNT**
**Violation of Cal. Civ. Code § 1788.14(c)**

241.   Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

242.   Cal. Civ. Code § 1788.14(c) prohibits debt collectors from initiating communications with a consumer when the debt collector has been previously notified in writing by the consumer's attorney that the consumer is represented by the attorney with respect to the debt and the notice includes the attorney's name and address and a request by the attorney that all communications regarding the debt be addressed to the attorney.

243.   Defendants knew Plaintiff was represented by counsel when MLG sent the July Letter directly to Plaintiff in an attempt to collect the alleged debt.

244.   Defendants' communication with Plaintiff directly when Defendants knew Plaintiff was represented by counsel, violates Cal. Civ. Code § 1788.14(c).

245.   For the foregoing reasons, Defendants violated Cal. Civ. Code § 1788.14(c), and are liable to Plaintiff therefor.

**EIGHTH COUNT**
**Violation of Cal. Civ. Code § 1788.17**

246.   Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

COMPLAINT AND
DEMAND FOR JURY TRIAL

247.   Cal. Civ. Code § 1788.17 provides that a violation of the FDCPA is also a violation of the RFDCPA.

248.   Defendants' conduct described herein violates the FDCPA, thus violating Cal. Civ. Code § 1788.17, making Defendants liable to Plaintiff therefor.

## **JURY DEMAND**

249.   Plaintiff hereby demands a trial of this action by jury.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgment be entered as follows:

   a. Finding Defendants' actions violate the FDCPA, RFDCPA, and Cal. Civ. Code ; and

   b. Awarding damages to Plaintiff pursuant to 15 U.S.C. § 1692k; and

   c. Awarding Plaintiff's attorneys' fees pursuant to 15 U.S.C. § 1692k, calculated on a "lodestar" basis; and

   d. Awarding damages to Plaintiff pursuant to Cal. Civ. Code § 1788.30(b); and

   e. Awarding Plaintiff's attorneys' fees pursuant to Cal. Civ. Code § 1788.30(c); and

   f. Awarding Plaintiff punitive damages to be determined at trial, for the sake of example and punishing defendant for its malicious conduct, pursuant to Cal. Civ. Code § 3294; and

   g. Awarding the costs of this action to Plaintiff; and

   h. Awarding pre-judgment interest and post-judgment interest to Plaintiff; all together with

   i. Such other and further relief that the Court determines is just and proper.

COMPLAINT AND
DEMAND FOR JURY TRIAL

1  DATED: March 3, 2025

2                                    Respectfully submitted,

3                                    */s/: Ely Grinvald, Esq.*

4                                    Ely Grinvald, Esq.
                                     2355 Westwood Blvd., #562
5                                    Los Angeles, CA 90064
                                     Phone: (310) 405-5684
6                                    grinvaldely@gmail.com

7                                    *Attorney for Plaintiff*

8                                    *Tyrol Mitchell*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                     - 38 -